**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF NEW JERSEY**

_____
MICHAEL WATTS and JESSICA OLSON,   :

    Plaintiffs,   :   Hon. Joseph H. Rodriguez

  v.   :   Civil Action No. 16-697

DETECTIVE ATEM K. ATKO, DETECTIVE   :   **OPINION**
CHRISTINE A. SULLIVAN and
DETECTIVE JOHN DOE #1   :
    Defendants.
_____   :

This matter comes before the Court on motion of Defendants Detectives Atem K. Ako ("Ako") and Christine A. Sullivan ("Sullivan") to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). The Court has considered the written submissions of the parties and the arguments advanced at the hearing on February 22, 2017. For the reasons stated on the record that day, as well as those that follow, Defendants' motion is granted in part and denied in part.

Plaintiffs Michael Watts and Jessica Olsen were arrested by the Defendants on February 19, 2014 and charged with money laundering and involuntary servitude. The Defendants are both members of the State of New Jersey Department of Law and Safety, Division of Criminal Justice. In the eight count Complaint, Plaintiffs set forth numerous Constitutional violations related to the arrest and search of the Plaintiffs, which stems from an alleged factually baseless warrant obtained by Ako. Compl. ¶ 16. In general terms, Defendants claim they were given information by two witnesses related to R.W.,

1

who is a young adult that resided with the Plaintiffs.  These witnesses claim, among other things, that R.W. was being held in the house against her will.  Based in part on this information, Ako made an application for a search warrant and the eventual execution of the warrant lead to the Plaintiffs' arrest and detention.

As plead, the Complaint sets forth facts sufficient to meet notice pleading standard set forth in Fed. R. Civ. P. 8.  However, the Complaint includes references and citations to several exhibits, which include the search warrant, transcripts of interviews with the two alleged witnesses, a copy of an interview with R.W., and a copy of the return of the search warrant.  These references significantly expand the factual underpinnings of the Complaint and form the basis for most of Defendants' motion to dismiss.

## I.     Background

The Complaint sets forth the following claims.  Counts I through IV set forth violations against Plaintiff Watts.  Counts I and II allege a violation of 42 U.S.C. § 1983 against Ako and Sullivan respectively, based on false arrest, malicious prosecution, illegal search and seizure, due process violations, and deprivation of property.  Count III alleges similar claims against John Doe #1 police officer.  Count IV is styled as "Violation of Plaintiff's First, Fourth, Fourteenth, Fifth, Eighth and Fourteenth Amendment Protection Against False Arrest, Malicious Prosecution, and Unlawful Search and Seizure of the Person and Property" as alleged by Watts against Defendants Ako, Sullivan and John Doe #1.  Counts V though VIII relate to violations against Olson which mirror those plead as to Plaintiff Watts.

Defendants move for dismissal on the following grounds. First, all claims against the Defendants in their official capacity should be dismissed on the basis of sovereign immunity and because Defendants are not persons amenable to suit pursuant to 42 U.S.C. § 1983. Second, Defendants claim that Plaintiffs' repeated claims of negligent behavior fails to state a claim under 42 U.S.C. § 1983. Third, Defendants move to dismiss the claims under the Fifth and Fourteenth Amendments. Fourth, Defendants claim that the exhibits referenced in the Complaint undermine Plaintiffs' claims that probable cause was lacking for the search warrant and arrest. Fifth, Defendants claim that even if probable cause was lacking, the law at issue was not clearly established on February 19, 2014. For all of these reasons, Defendants claim that that the Complaint fails to state a claim upon which relief can be granted and should be dismissed.

In their brief and on the record during oral argument, Plaintiffs state that they are not pursuing claims against the Defendants in their official capacity and stipulate that any reference to claims against the Defendants in their official capacity be stricken from the Complaint. Plaintiffs also agree that to the extent these claims can be inferred in the Complaint, these claims are dismissed with prejudice. In addition, Plaintiffs acknowledge claims exclusive predicated upon negligent conduct fail to state a viable claim under 42 U.S.C. § 1983. Here, Plaintiffs' use of the negligence standard is coupled with allegations of purposeful and intentional actions related to the Defendants' conduct in the application for the warrant, execution thereof, and arrest and detention of the Plaintiffs. During the hearing in this matter, Defendants agreed that such pleadings on their face give rise to a claim under 42 U.S.C. § 1983. For these reasons, the Court finds that the Complaint as plead in paragraphs 38, 43, 45 are predicated willful and

intentional conduct and not merely negligence. Defendants' motion to dismiss on this basis is denied.

Finally, Plaintiffs agree that despite listing a Fifth Amendment violation in the Complaint, Plaintiffs do not intend to pursue such a claim. As a result, Defendants motion to dismiss on this basis is granted. The remainder of the claims will be addressed in turn

## II.   Standards of Review

### A. Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for dismissal of a claim based on "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A complaint should be dismissed pursuant to Rule 12(b)(6) if the alleged facts, taken as true, fail to state a claim. Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss pursuant to Rule 12(b)(6), ordinarily only the allegations in the complaint, matters of public record, orders, and exhibits attached to the complaint, are taken into consideration.[1] See Chester County Intermediate Unit v. Pa. Blue Shield, 896 F.2d 808, 812 (3d Cir. 1990). It is not necessary for the plaintiff to plead evidence. Bogosian v. Gulf Oil Corp., 561 F.2d 434, 446 (3d Cir. 1977). The question before the

---

[1] "Although a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002) (internal quotation marks and citations omitted) (emphasis deleted). Accord Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004) (citations omitted). Here, Plaintiffs' Complaint includes several references to exhibits attached to the Complaint and the Court will consider these documents without converting the motion to dismiss into a summary judgment motion. In re Rockefeller Ctr. Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir. 1999).

Court is not whether the plaintiff will ultimately prevail. Watson v. Abington Twp., 478 F.3d 144, 150 (2007). Instead, the Court simply asks whether the plaintiff has articulated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).

"A claim has facial plausibility[2] when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). "Where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Thus, a motion to dismiss should be granted unless the plaintiff's factual allegations are "enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 556 (internal citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'shown'-'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

### B. 42 U.S.C. § 1983 and Qualified Immunity

Plaintiff's constitutional claims are governed by Title 42 U.S.C. § 1983, which provides a civil remedy against any person who, under color of state law, deprives

---

[2] This plausibility standard requires more than a mere possibility that unlawful conduct has occurred. "When a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Id.

another of rights protected by the United States Constitution. See Collins v. City of Harker Heights, 503 U.S. 115, 120 (1992). Any analysis of 42 U.S.C. § 1983 should begin with the language of the statute:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. As the above language makes clear, Section 1983 is a remedial statute designed to redress deprivations of rights secured by the Constitution and its subordinate federal laws. See Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979). By its own words, therefore, Section 1983 "does not . . . create substantive rights." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Baker, 443 U.S. at 145, n.3).

To state a cognizable claim under Section 1983, a plaintiff must allege a "deprivation of a constitutional right and that the constitutional deprivation was caused by a person acting under the color of state law." Phillips v. County of Allegheny, 515 F.3d 224, 235 (3d Cir. 2008) (citing Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996)). Thus, a plaintiff must demonstrate two essential elements to maintain a claim under § 1983: (1) that the plaintiff was deprived of a "right or privileges secured by the Constitution or the laws of the United States" and (2) that the plaintiff was deprived of his rights by a person acting under the color of state law. Williams v. Borough of West Chester, Pa., 891 F.2d 458, 464 (3d Cir. 1989).

The doctrine of qualified immunity provides that "government officials performing discretionary functions . . . are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

6

rights of which a reasonable person should have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Thus, government officials are immune from suit in their individual capacities unless, "taken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right" and "the right was clearly established" at the time of the objectionable conduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). Courts may exercise discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

This doctrine "balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably" and it "applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Id. (internal quotation omitted). Properly applied, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.'" Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2085 (2011) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202 (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)). That is, "[t]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Couden v. Duffy, 446 F.3d 483, 492 (2006). "If the officer's mistake as to what the law requires is reasonable," the

7

officer is entitled to qualified immunity. Couden, 446 F.3d at 492 (internal citations omitted). Further, "[i]f officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." Malley, 475 U.S. at 341 (1986). See also Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (The general touchstone is whether the conduct of the official was reasonable at the time it occurred.) Finally, because qualified immunity is an affirmative defense, the burden of proving its applicability rests with the defendant. See Beers-Capital v. Whetzel, 256 F.3d 120, 142, n.15 (3d Cir. 2001).

### III.   Analysis

The factual background of this case is extensive and weaves together several narratives that center on R.W., who is a young adult that lived with the Plaintiffs.

R.W. was introduced to Plaintiffs by a co-worker at the Kohl's Department Store. Ex. B. Through the coworker, R.W. met two women, Chloe and Chanel, who are both exotic dancers at the Cove in Philadelphia and lived at Plaintiffs' residence during the relevant time period. Id. After some time, R.W. was convinced to move into Plaintiffs' Delran residence and to pursue employment at the Cove as a dancer. Id. R.W. understood that Chloe and Chanel were Watts's girlfriends even though they referred to Watts as "Daddy." Id. R.W. moved out of her mother's house and into Plaintiffs' residence on or about February 3, 2014. In her statement, R.W. claims that when she moved in, she was immediately uneasy and felt that something was amiss. Id., p. 21.

R.W. claims she went upstairs into her own room to unpack. Id., p. 26. When Watts told her that he was going to take her out to get new clothes, R.W. tried to stall by stating that she wanted to do her hair. Id., 28. R.W.'s stall tactic was employed to give her time to contact her mother and wait for her mother to come and pick her up.

Plaintiffs' highlight R.W.'s testimony where she claims that during this period of time while she waited for her mother, R.W. told the police that Watts never came into her room, never observed her change clothes, and that R.W. did not shower. Id., at 28-29.

According to Plaintiffs' R.W.'s statement to the Delran Police demonstrates that she changed her mind about wanting to leave Plaintiffs' residence because she told police that she realized that the girls in the house worked as a team, that she would not have to dance nude, and that she wanted to try and make some real money from dancing. Id., pp. 31-33.  In addition, Watts' living circumstances were the subject of a reality television show titled "For the Love of one" and Watts assured R.W. that she was not required to participate in the filming of his documentary. Id. pp 41-42.  The Delran Police declined to take any action following their interview of R.W. and Plaintiffs ask the Court to infer, on this basis, that no grounds existed for further investigation and that Ako's pursuit of a warrant lacked all probable cause.

During this time, Defendant Ako had been employed in his capacity for a little over one year. See Ex. A. p4.  On February 10, 2014, Ako was contacted by a United States Probation Officer about Plaintiff Watts and informed that Watts's residence housed a number of young girls. Id., Ex. A, pp. 5-6.  Ako also avers that R.W.'s mother contacted the Delran Police Department because she believed that her daughter was being held against her will and was not free to leave the residence. Id., pp. 7-8.  Based on the mother's complaint, the Delran Police went to Watts's residence, removed R.W., and took her to the police station for questioning.  While at the police station, R.W. provided a taped statement regarding her living circumstances with the Plaintiffs.  The Delran

9

Police permitted R.W., who was 18 years old at the time to return to Plaintiffs' residence after the interview concluded.

Ako, however, after coming into possession of the Delran Police documents, authored an affidavit in support of an application for a search warrant of Plaintiffs' residence. Ako's Affidavit included a comprehensive list of items to be seized and includes a recitation of Ako's "expertise" and "qualifications" in the facts section of the application. Id.  The Affidavit details some of the alleged circumstances of R.W.'s living arrangement with the Plaintiffs and highlights the alleged fact that R.W. was forced to relinquish her flip phone, was provided a phone by the Plaintiffs, and her access to social media was managed by Plaintiffs in an alleged attempt to exert control over every aspect of her life. Id.  Watts is also alleged to have commandeered R.W.'s social security card and license. Id. The Affidavit states that no sexual acts or physical restraints were alleged by R.W., but that R.W. believed Watts ("Daddy") to be a pimp.  Plaintiffs point out that Ako did not contact R.W. or her mother before relying on the aforementioned information as the basis for the warrant application.  In addition, Plaintiffs claim that in an effort to support his narrative of illegal activity, Ako took liberty in characterizing facts in a manner that overlooked R.W.' s testimony.  Instead, it is alleged that Ako uses his "experience" to weave a connective web between certain facts and their indication of illegal conduct.

Ako's questionable motive, it is alleged, is evidence by the lack of urgency he exhibits in obtaining the warrant. Almost eleven days after R.W. was picked up by the Delran Police and gave her statement, Ako's warrant was executed and the Plaintiffs were arrested.  Some of the evidence attached to the Complaint, compiled after the

10

arrests, paints a benign picture of consenting adults engaging in group living. For example, two of Watts's girlfriends gave statements, Julieann Colon and Michelle Rolon. In sum, both girls claim that they freely agreed to the living arrangement with Watts and knowingly entered into a group relationship. See generally, Exs. C &D. In addition, they claim that their personal information, including social security cards and licenses, were taken by Watts but quickly returned. Id., Ex. C, 40. Julieann claimed that Watts paid for her medical exam and that the exam was necessary to rule out any communicable disease, including sexually transmitted diseases that may infect the other girls in the relationship. Id. Julieann disavowed prostitution claims at home or at the Cove and states that Watts never asked the girls to engage in any prostitution. Id., p. 68.

Michelle Rolon lived with Olsen and Watts before they moved to Delran and her residency preceded Colon's move into the house. Ex. D., 12-15. Rolon claims that after she became involved with Watts, five other women joined the fold, all willingly and knowingly. Id., 23. For these reasons, Plaintiffs argue that Defendants' attempt to paint the Plaintiffs as engaging in nefarious activity is objectively unreasonable.

Although the aforementioned facts are not fully comprehensive, they serve to highlight the favorable inferences Plaintiffs enjoy on a motion to dismiss. The Court recognizes that a finding of qualified immunity should be made at the earliest possible point in a case. A finding that Defendants are entitled to qualified immunity on this motion discounts the favorable inferences that advance Plaintiffs' claims, predicates a disposition on a limited factual record, and implicates the Third Circuit's cautionary directive that dismissal predicated upon qualified immunity at the motion to dismiss stage "is generally unwise . . . as it is necessary to develop the factual record in the vast

majority of cases." <u>Newland v. Reehorst</u>, 328 Fed. Appx. 788, 791 n. 3 (3d Cir. 2009). As a result, the Court finds that qualified immunity does not attach at this time, although Defendants may raise the defense on summary judgment, and Defendants' motion is denied on this basis.

Finally, Defendants motion to dismiss Plaintiffs' claims under the Fourteenth Amendment is denied in part. In so far as Plaintiffs' claims invoke Fourth Amendment protects, the motion is denied. Plaintiffs argue that the Fourteenth Amendment is plead insofar as it makes the Fourth Amendment applicable to the states. Where a constitutional amendment provides explicit protection against a particular kind of government action, that amendment is the source of the Court's evaluation of a claim under 42 U.S.C. §1983 rather than the general rights granted by the Fourteenth Amendment. <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 841 (1998) (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)). Allegations of false arrest and false imprisonment are evaluated under the Fourth Amendment rather than the Fourteenth Amendment. <u>See, e.g.</u>, <u>United States v. Lanier</u>, 520 U.S. 259, 272 (1997); <u>Berg v. County of Allegheny</u>, 219 F.3d 261, 268-69 (3d Cir. 2000). Therefore, the Court will consider Plaintiffs' constitutional claims under the Fourth Amendment.

## IV.   Conclusion

For the reasons stated herein, Defendants' motion is granted in part and denied in part. The Court grants the motion insofar as the Complaint alleges claims against the Defendants in their official capacity and dismisses all claims, to the extent such claims are pled, arising under the Fifth Amendment. Plaintiffs' constitutional claims will be evaluated under the Fourth Amendment rather than the Fourteenth Amendment.

An appropriate Order shall issue.

Dated: March 29, 2017

                                                 s/ Joseph H. Rodriguez
                                                 HON. JOSEPH H. RODRIGUEZ,
                                                 United States District Judge